[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON AETNA CASUALTY SURETY CO. MOTIONFOR SUMMARY JUDGMENT OF JANUARY 18, 1994 AND JANUARY 31, 1994
As to Aetna Casualty Surety policy #01-AL-138199 CT Page 6197 SR(4), effective 1/1/68 to 1/1/69 the plaintiff, in its brief of February 28, 1994 acknowledges that the policy had expired prior to the date of the High Point Landfill site activity attributable to the plaintiff for the purposes of this policy. The plaintiff withdraws its claim under the policy for High Point claims. Accordingly summary judgment may enter as to this policy as pertains to the High Point Landfill site, for Counts 22-36.
The defendant Aetna Casualty Surety moves for summary judgment on the basis that there is no evidence that Reichhold caused pollutants to be deposited at the High Point landfill during the period January 1, 1969 through January 1, 1971. The basis of the claim is that Reichhold does not have documentary evidence to support a determination that it did engage in the activity during that period of time. The plaintiff submits the deposition of one Raymond B. DeLorenzo who testified that he picked up loads for the Newbury Road and Rockport Road plants and delivered them to the High Point landfill from 1966 to 1967 until they closed the landfill in 1982. Deposition testimony of one Alan Bender, plant engineer for Reichhold, testified as to such deliveries from at least 1964 through the late 1970's. Substantial other evidence exists to that effect. The motion for summary judgment on this asserted basis is denied.
The defendant Aetna further contends in its motion of January 18, 1994 and its accompanying brief, that as a matter of law it cannot be demonstrated that the discharge of pollutants into the environment was "sudden and accidental." The defendant cites New York law and the decision of Judge Freed, November 29, 1993, in support of that proposition.
The question of "sudden and accidental" is a question of fact. The mere delivery of potentially polluting materials to a site on location is not in and of itself an answer to this question. For example, if a potential pollutant is delivered to a site in a container of such composition and structural integrity that it is designed to and has the capacity of retaining its integrity perpetually then the contents thereof, absent accident, will not escape into the environment. Similarly, even the most modern pollutant disposal facility, designed for ultimate CT Page 6198 containment integrity, can lose its containment ability through accidental trauma. The act of polluting is the "discharge into the atmosphere." See decision Judge Freed, November 29, 1991, p. 21, quoting Town of Moreau v. OrdinExterminating Co., 566 N.Y.S.2d 446. Conversely, if such delivered container is degradable and subject to deterioration or loss of integrity with the passage of time, or by exposure to normal or anticipated physical activity at the site, the escaping of such pollutant cannot be said to be sudden and accidental. It follows that if the loss of integrity of a permanent delivery container, as above discussed, is caused by events which are not reasonably to be contemplated, bearing in mind the physical activity expected to occur in the subject location, or if the site itself spontaneously loses its containment ability, the incident of polluting can be both sudden and accidental.
This Court cannot assume, from the facts or lack of facts available to this Court as to whether or not, or to what extent, any alleged pollution occurring at the site was, or was not, "sudden and accidental." The motion for summary judgment on these grounds is denied.
The Aetna moves for summary judgment by motion dated January 31, 1994. The Aetna claims that summary judgment should enter for the excess policies as "the excess insurance policies issued to Reichhold provide coverage only after the limits of the underlying policies have been exhausted."
First, the court cannot determine, on the basis of the evidence submitted, that in fact the potential amount of the losses claimed do not have the prospect of exceeding the policy limits of the primary coverages asserted to be applicable to this claim of loss. These are matters which are most appropriate for determination at trial. Many years ago the courts of this state abandoned the rule which required that a plaintiff must express the amount of his loss in the ad damnum clause, thereby unjustly confining a litigant to his expectation of damages when the evidence at trial, from all sources, demonstrated a loss in excess of that believed to be incurred by the claimant. This Court determines that it is not proper to accomplish by judicial fiat what the legislature has abandoned (see PA 77-497; CT Page 6199 General Statutes 52-91) because of its potential for injustice. Further, the plaintiff's predictions as to potential damage, by deposition, are not conclusive judicial admissions and do not foreclose actual proof of damages at trial.
There is yet a further consideration as concerns the relationship between the excess carriers and the primary concerns. The policy provision submitted with this motion, Section 2 Indemnity Agreement, provides that the coverage is in excess of that "which would be covered by the terms of the Controlling Underlying Insurance." The excess policies, by this reference, presuppose a determination of whether or not the loss is "covered by the terms" of the underlying insurance. The defendant is a proper party to participate in the determination of that question, which in the absence of the defendant excess carrier, would not result in a determination of the issue in such a fashion as to be res adjudicata and binding upon either the plaintiff or the defendant excess carriers. The severing of the parties under these circumstances gives rise to the spectre of years of multiple litigation, and is precisely contrary to the determination of this Court that these matters be tried together in the format of the Bellweather trial.
For the reasons set forth herein, the motions for summary judgment of the Aetna Casualty Surety Company of January 19, 1994 and January 31, 1994 are denied.
L. Paul Sullivan, J.